is, whether, in a case like the present, the court can relieve the party in this summary mode of proceeding? No precedent of such a proceeding has been cited by the counsel for the prisoner, but I shall not fear to be the first judge (if I am so), to make the precedent. The notes in question are admitted to be true and genuine, and no accusation of any kind is made against the prisoner in relation to them, nor can they be used as evidence against the prisoner, upon his trial for having counterfeited other notes. They were taken from the person of the prisoner by the mayor, the examining and committing magistrate, by colour of his office, and are detained by him in consequence of the prosecution now depending in this court. Under these circumstances, I consider the money to be constructively in possession of the court, and subject to its order. The constitution, by one of its amendments, has secured to every person under a criminal prosecution, the right to have compulsory process for obtaining witnesses in his favour, and the privilege of having the assistance of counsel to defend him. But what would these securities avail the accused, if a judicial officer, or any other officer of the court may legally deprive him of the means of obtaining his witnesses, and of employing the counsel in whom his confidence is placed; by detaining the money found upon his person, which, in many cases, may be his all? To turn the prisoner over to his ordinary remedy, by suit against the officer, which might not be decided until long after his fate in the criminal prosecution had been fixed, would be a mockery of justice, and a reproach to the law.

The only doubt I felt as to the propriety of affording summary relief to the applicant was, that he had elected his remedy by suit against the mayor. This difficulty, however, may be got over by making the dismission of that suit the condition of making the rule absolute. Rule made absolute as above.

[NOTE. For the subsequent trial and conviction of the prisoner on the charge of forgery, see Case No. 14,883.]

═══════

## Case No. 3,322.

### In re CRAIG.

[3 N. B. R. 100 (Quarto, 26); 3 Ben. 353.][1]

District Court, S. D. New York. Aug. Term, 1869.

#### EXAMINATION OF BANKRUPT.

Where counsel of creditor put questions to bankrupt upon his examination, touching property of his wife, and his own acts in relation thereto, bankrupt objected that the questions related to matters existing and transpiring prior to the time when the creditor's debt was contracted, and declined to answer unless compelled. Held,

[1] [Reprinted from 3 N. B. R. (Quarto, 26), by permission. 3 Ben. 353, contains only a partial report.]

that the questions were proper, and bankrupt should answer.

[On certificate of register in bankruptcy.

[In the matter of Daniel H. Craig.]

I, Odle Close, one of the registers of said court in bankruptcy, do hereby certify, that in the course of the proceedings in said cause before me, the following questions arose, and were stated and agreed to by the counsel for the opposing parties, to wit: The following is a summary of the evidence upon the point to be submitted to the court:

"Q. Was Hiram Hyde ever connected with you in business in any way. A. Yes. Q. In what way? A. I loaned him money. Q. How much money? A. I do not know; that was before your time; it was before 1856; and under the advice of Mr. Field I decline to answer such questions until somebody compels me to do it. That question goes back to somewhere in the neighborhood of 1849. (Counsel for bankrupt states that he objects to any question going back of 1856, and directs the witness not to answer such questions until they shall have been certified to the court.) Witness.—I decline to answer any question relating to matters previous to 1856, until the decision of the court is obtained. Q. Did your wife have any property when you married her? A. I suppose she had some. Q. How much? (Mr. Ensign objects to the question, and witness declines to answer, for reasons before given.) Q. Do you recollect, approximately, how much she had? A. I decline to answer, subject to the decision of the court. Q. Was any property settled on your wife, at the time of your marriage, by marriage settlement? (Same objection.) Q. Has your wife derived any property since her marriage and prior to 1856, either from you or from any other person, to your knowledge? (Same objection.) Q. If so, state what amounts, from whom, and what property? (Same objection.) Mr. Ensign.—The witness declines, by the advice of his counsel, to answer any question in regard to any transaction in respect either to his own or his wife's property prior to 1856, the date when Mr. Vail's debt was contracted, subject to the decision of the court. Mr. Olmstead.—The counsel for Mr. Vail, the judgment debtor, proposes to ask such questions for the purpose of showing that all or most of the property which is now held in the name of Mrs. Craig, the wife of the bankrupt, was derived from her husband, the bankrupt, without any consideration from her, such questions to be certified by the register to the court. Q. How much property is your wife worth, to the best of your knowledge? (Objected to.) Q. Did your wife ever derive any of her property from you? (Objected to as going back of 1856, and witness declines to answer.) Q. Did you, on or about May 10, 1858, make any agreement with the American Telegraph Company, whereby you, together with your wife, assigned and transferred to the said company the interest of yourself and wife in certain agreements made

between the Commercial Telegraph Company and John McKinney, Charles Spear, and Wilson G. Hemp, or other parties, or any interest in the said agreements? Look at this paper and see if it is a copy of the paper. (Handing witness paper.) A. I should suppose that was the agreement I have in my mind. Q. Di l your wife sign that? A. I suppose she did; that is the paper I have referred to. Mr. Olmstead offers the paper in evidence. Mr. Ensign objects on the ground that the paper is a copy, and no proof has been made that the original is lost. Q. Do you or not know whether any money was paid by the American Telegraph Company, or whether there was any other consideration moving from them for the assignment to them by yourself and wife of May 10, 1858? Mr. Ensign.—I object to any questions with reference to the substance of the papers offered in evidence, on the ground that the originals must be produced. Q. Was any money paid or was there any consideration moving from the American Telegraph Company to yourself and wife on any assignment of any interest to them? (Same objection.) (Answer taken, subject to objection.) Q. What were the matters in which it was supposed you had an interest, and by reason of which you were called upon to execute the assignment to which you have referred? (Objected to that it refers to transactions prior to 1856.) (Answer taken, subject to objection.) Q. Did you make any arrangement with the Telegraph Companies by which you were enabled to have the dispatches sent to you immediately following the dispatches sent to the Associated Press? (Objected to.)"

I am of opinion that the several questions objected to by the petitioner were pertinent and proper, except the question as to whether the petitioner and wife transferred to the American Telegraph Company their interest in certain agreements made between the Commercial Telegraph Company and John McKinney and others, which question is objectionable in so far as it calls for the contents of any such agreement. I am of opinion that the copy paper offered in evidence, purporting to be an assignment to the American Telegraph Company, is not admissible in evidence, on the ground that the same was a copy, as no proof was made that the original was lost, or, if not lost, no notice was given to produce the same.

BLATCHFORD, District Judge. I concur with the register in his views above stated.

NOTE [from original report]. See, also, [Case No. 3,323,] and In re Clark [Id. 2,805]. Where the question relates to property of a stranger, the bankrupt need not answer. In re Van Tuyl [Id. 16,880]. Nor can he be examined as to business done or property acquired after date of filing petition in bankruptcy, unless it can be connected with the bankrupt estate.
[NOTE. For subsequent examinations of the bankrupt and his wife, see Cases Nos. 3,323 and 3,324.]

## Case No. 3,323.

### In re CRAIG.

[4 N. B. R. (Quarto) 50.][1]

District Court, S. D. New York. 1870.

#### EXAMINATION OF BANKRUPT.

1. Where the bankrupt on his examination declines answering questions relative to his wife's property, held, that the same were pertinent and proper.

2. Where the wife of a bankrupt on examination before a register declines to answer because the matters enquired of are her private business, held, that the same were pertinent and proper.

[On certificate of register in bankruptcy.
[In the matter of Daniel H. Craig, a bankrupt.

[For a prior decision as to the pertinency of certain questions, see Case No. 3,322.]

I, Odle Close, one of the registers of said court in bankruptcy, do hereby certify that in the course of the proceedings in said cause before me, the following questions arose pertinent to said proceedings, to wit:

Mr. D. H. Olmstead appeared as counsel for Mahlon Vail, a creditor of said bankrupt, and Mr. E. Ensign as counsel for the bankrupt on the examination of said bankrupt at instance of said creditor.

The following is a summary of the evidence upon the points to be submitted to the court: The said bankrupt on his examination testified as follows: "Q. 1042.—Has your wife derived any property since her marriage, and prior to 1856, either from you, or from any other person to your knowledge? Mr. Ensign—I object so far as the question relates to any other person. As far as it relates to himself, the question has been already asked. Q. 1043—If so, state what amounts, from whom and what property? (Same objection.) * * * Q. 1031—Do you know whether your wife has derived any property, real or personal, from any person, since your marriage? (Objection.) Q. 1034—Has she derived any property from you, or any interest in any property since your marriage with her, except such as was necessary for her support? Mr. Ensign—I object to the question on the ground that it is a question of law to decide what amount of property is necessary for her support, and impossible to answer the question as a matter of fact. Q. 1039—What other property than was necessary for the immediate support of your wife and family have you given to her, and when have you given it to her, and in what amounts? (Same objection.) Q. 1040—Has your wife ever held in her own right, any stock, or any interest in any telegraph company, or in any patent connected with a telegraph company, or any other property or estate of any character, which legally or equitably belonged to you? Mr. Ensign—I object to that on the ground that it is hearsay evidence; that is a matter of law, and not within the knowl-

---

[1] [Reprinted by permission.]